```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

CARLOS TRUJILLO              *         CIVIL ACTION

VERSUS                       *         NO: 09-768

STATE FARM FIRE AND CASUALTY *         SECTION: "D"(4)
INSURANCE COMPANY
```

## ORDER AND REASONS

Before the court are the following motions filed by Defendant, State Farm Fire and Casualty Insurance Company:

(1) **"Motion in Limine to Exclude the Report and Testimony of Don Kotter as Irrelevant and Unreliable"** (Doc. No. 43); and

(2) **"Motion for Summary Judgment as to Plaintiff's Contents, ALE and Bad Faith Claims" (Doc. No. 44).**

Plaintiff, Carlos Trujillo, filed memoranda in opposition. The motion, set for hearing on Wednesday, January 12, 2011, is before the court on briefs, without oral argument. Now, having considered the memoranda of counsel, the record, and the applicable law, the court rules.

## I. State Farm's "Motion for Summary Judgment as to Plaintiff's Contents, ALE and Bad Faith Claims"

In this Hurricane Katrina matter, Plaintiff's two-story house (located at 4101 Vincennes Place, New Orleans, Louisiana) sustained wind and wind-related damage as a result of Hurricane Katrina. Plaintiff filed a claim under his State Farm homeowner's policy which provided the following coverage limits: $604,905 for the dwelling under Coverage A; $60,490 for dwelling extensions under Coverage A; $453,679 for contents under Coverage B; and the actual Additional Living Expenses under Coverage C. State Farm issued payment under the homeowner's policy in the amount of $20,931.15 for damages under Coverage A (after application of depreciation and the $12,014.00 deductible) and $2,576.39 for Prohibited Use under Coverage C. Plaintiff picked up his settlement draft from State Farm on December 30, 2005.

Plaintiff's house, which was inundated by at least four feet of flood water from the aftermath of Hurricane Katrina, also sustained flood and flood-related damage. Plaintiff had a State Farm policy of flood insurance with a $250,000 policy limit for structural damages. Plaintiff did not have coverage for contents under his flood policy in effect at the time of Hurricane Katrina. State Farm paid Plaintiff his $250,000 policy limit for structure under the flood policy.

In this suit, Plaintiff seeks additional payments under his homeowner's policy for losses caused by wind. Plaintiff also alleges that State Farm's adjustment of his claim was arbitrary and capricious, and thus he asserts claims for penalties, attorneys fees and costs. However, in his opposition to Defendant's Motion for Summary Judgment, Plaintiff "concedes he has no claim for contents." (Opp. at p. 1). Thus, Defendant is entitled to summary judgment dismissal of Plaintiff's contents claim.

As to Plaintiff's claim for Additional Living Expenses (ALE), Plaintiff admits that his property "was rendered uninhabitable by a combination of wind and flood damage" (Statement of Contested Fact, No. 46), and he fails to produce any competent evidence to show that his property was rendered uninhabitable by a covered loss (wind). Further, Plaintiff has not produced any evidence to show that he sustained additional living expenses. In his Opposition, Plaintiff states that he is still "attempting to locate credit card receipts and cancelled checks reflecting these living expenses." (Opp. at p. 6). However, at this summary judgment stage, Plaintiff cannot survive summary judgment dismissal of Plaintiff's ALE claim without competent summary judgment evidence.

As to Plaintiff's bad faith claims, the court finds that Plaintiff has failed to show evidence that State Farm acted arbitrarily and capriciously in adjusting Plaintiff's claims.

After December 30, 2005 (when Plaintiff picked up his settlement draft from State Farm) and prior to filing this suit, Plaintiff did not contact State Farm to seek additional payment for structural damage under his homeowner's policy.  (Doc. 44-2, Affidavit of James Tally, Team Manager for State Farm, at ¶31).  Plaintiff did not submit any repair receipts in support of his claim for supplemental payment for structural damages under his homeowner's policy until July 2010.  (*Id*. at ¶35).

Accordingly, the court will **GRANT** Defendant's **"Motion for Summary Judgment as to Plaintiff's Contents, ALE and Bad Faith Claims" (Doc. No. 44)**.

## II.  State Farm's "Motion in Limine to Exclude the Report and Testimony of Don Kotter as Irrelevant and Unreliable"

In its Motion in Limine to Exclude Plaintiff's Expert Estimator (Don Kotter), State Farm argues that: (1) Kotter's repair estimate is irrelevant because the actual repairs were substantially completed between 2005 and 2007, Kotter did not inspect the property and prepare his report until 2010 (almost five years after Hurricane Katrina and some three years after actual repair costs were incurred), and in making his report and estimate, Kotter did not take into account the actual repairs completed or

the actual repair costs incurred; (2) Kotter's estimate and related testimony are based on unreliable data; and (3) Kotter is insufficiently qualified to offer causation opinions reflected in his wind-only estimate.

In his opposition memorandum to State Farm's Motion in Limine to Exclude Plaintiff's Expert, Don Kotter, Plaintiff "agrees that, to the extent repairs have been completed, the cost incurred in making those repairs governs his recovery for those uncompensated or undercompensated items." (Opp. at p. 2). However, Plaintiff argues that "some required repairs have not been made, most notably the replacement of the roofing system." (*Id.*). In response to this argument, State Farm contends that the evidence submitted by Plaintiff in discovery shows that repairs to Plaintiff's roof, gutters and downspouts have been completed and the actual repair costs incurred. (State Farm's Reply at pp. 2-3, citing Plaintiff's Dep at p. 57 and Contractor's Invoice, attached as Ex. B to State Farm's Reply).

The court finds that State Farm is ignoring the main issue in this case: what is Plaintiff entitled to regarding repair of his roof? Kotter opines that:

> The whole roof needs to come off and be put back. It's been patched. There's been temporary repairs made. But the whole roof needs to come off. And that's 27 percent of the job without profit and overhead.

(Kotter Dep,. at p. 40).[1]

Kotter further testified:

Q. Is it possible to replace just certain tiles and not full sections?

A. Well, they're not going to match. He's done that. If you look at my pictures, you can see where they went in and patched areas, and it's a big eyesore. t's a different color slate. You can't match the exact color or the wear on the slate itself. So in my opinion, he needs to change out the whole roof.

Q. That's so that it matches, right?

A. Right, so it matches. And since there was repairs on every slope, we can do that. Now, the other way to do it would be to detach and possible reset portions of the whole roof, which is going to be more-the cost is going to be greater than just going ahead and putting a whole new roof.

Q. So the doctor hasn't replaced the roofing? He's done repairs, correct?

A. He's done repairs. He's had emergency repairs done to protect the home from leaking any further.

(*Id.* at pp. 87-88).

Kotter estimates for the roofing repairs include $43,158.26 for repair of the lower slate roof, $3,750.04 for repair of the metal roofing and $21,655.05 for repair of the second story roof. (*See* State Farm's Ex. D attached to Motion in Limine, Kotter's

---

[1] Kotter admitted that he did not have any evidence of the pre-Katrina condition of the slate roof, but Plaintiff had told him that there was no pre-existing damage to the roof. (Kotter Dep. at 84).

Report (revised on June 16, 2010)).

While State Farm represents that its payment to Plaintiff included payment for roof repairs (Talley Affidavit at ¶29), it is unclear from the record the actual amount paid for roof repairs. However, according to State Farm (and its structural engineer (Donald Barnes) and estimator (Robert Foley)), there was minimal wind damage to Plaintiff's roof. Finally, based on the Contractors Invoice that Plaintiff submitted to State Farm in discovery, Plaintiff paid $9,262.00 for repairs to his roof, gutters and pipes in February 2007.

The court also finds that the record is unclear as to what other repairs besides the roof, if any, have not been completed. In his deposition, Kotter testified that when he inspected the property in June 2010, about 65% of repairs had been completed. (Kotter Dep. at pp. 36-37). Further, Kotter explained that in his opinion, the roof repair constitutes 27% of the total repairs. (*Id*. at 39).

Accordingly, the court will **GRANT IN PART** and **DENY IN PART** Defendant's **Motion in Limine to Exclude the Report and Testimony of Don Kotter (Doc. No. 43).**

### III.  Conclusion

For reasons set forth above,

**IT IS ORDERED** that Defendant's **"Motion for Summary Judgment as to Plaintiff's Contents, ALE and Bad Faith Claims" (Doc. No. 44)** be and is hereby **GRANTED,** dismissing Plaintiff's contents, additional living expenses, and bad faith claims;

**IT IS FURTHER ORDERED** that Defendant's **Motion in Limine to Exclude the Report and Testimony of Don Kotter (Doc. No. 43)** be and is hereby **GRANTED** to the extent that (as to damaged items other than the roof, gutters and downspouts), the court will not allow Mr. Kotter to testify regarding his estimate of repairs if actual repairs were substantially performed or actual repair costs were incurred before he inspected the subject property and prepared his report and estimate, and he failed to take into account the actual repairs or the repair costs; and

**IT IS FURTHER ORDERED** that Defendant's **Motion in Limine to Exclude the Report and Testimony of Don Kotter (Doc. No. 43)** be and is hereby **DENIED** to the extent that the court will allow Mr. Kotter to testify as to the damage to Plaintiff's roof.  The court will also allow Mr. Kotter to opine that damage to Plaintiff's roof was caused by wind, as State Farm's own experts have opined that the damage to Plaintiff's roof, albeit minimal, was "wind" damage.

New Orleans, Louisiana, this **19th** day of **January**, **2011**.

```
              _____
                    A.J. McNAMARA
              UNITED STATES DISTRICT JUDGE
```